## Ogden *versus* Brown *et al.*

An executory contract will pass a fee simple, in equity, without words of inheritance.

Whether an informal instrument, transferring an interest in real estate, shall be held a conveyance, or only an agreement for a conveyance, depends not on any particular words or phrases found in it, but on the intention of the parties, as collected from the whole contract.

Where there is a covenant for further assurance, the intention is clear that the instrument is only to be deemed an agreement to convey; but the intention may be manifested without such a covenant.

ERROR to the Common Pleas of *Bradford county.*

This was an ejectment by Sarah Ogden against William H. H. Brown, Byron Brown, Barton Brown, James C. Ridgway, Joseph L. Johnson, D. S. Miller, and James Roof, for a tract of 300 acres, in Franklin township, Bradford county.

The plaintiff claimed title to an undivided eighth part of the land in controversy, by descent from her grandmother, Amy Cranmer, formerly Amy Wilcox, who died in 1834, at the advanced age of 104 to 108 years.

The defendants claimed title under Stephen Wilcox, a son of the

[*Ogden v.* Brown *et al.*]

said Amy Cranmer, by her first husband, to whom the premises were conveyed by the following instrument:—

" *To all to whom these presents shall come:* KNOW YE, That I, Amy Cranmer, of Franklin township, county of Bradford, and state of Pennsylvania—these presents grant, bargain, and convey all my right and title and quit-claim, whatsoever, unto Stephen Wilcox, of the aforesaid township, of a certain tract of land situate in the aforesaid township, and lying on the north side of Towanda creek, and designated by the name of the Allen and Carr farm, which belongs to the Commonwealth of Pennsylvania, and the price of the right of soil established by the legislature of the Commonwealth, at their session in 1822, in the consideration that the said Stephen Wilcox deliver unto me, the said Amy Cranmer, one-third of all the produce of all kinds whatsoever; grain to be delivered in the half-bushel, and hay in the barn, during my natural life; then the said Stephen is to have free and peaceable possession, clear of all encumbrances, except the lord of the soil. In witness whereof, I have hereunto set my hand and seal this 7th day of July 1824.

" In presence of                                      her
    " Nathan Bullock,                    " AMY ✗ CRANMER.
    " Epaphras O. Butler.                          mark.

" *Bradford county*, ss.

" Personally appeared Amy Cranmer, and acknowledged the above to be her act and deed, before me.

NATHAN WILCOX. [L.S.]

" Recorded December 12th 1829."

The court below (WILMOT, P. J.) charged the jury that this instrument was an executory contract, under which the fee passed to Stephen Wilcox, on the death of his mother, and instructed them to find for the defendants; to which the plaintiff excepted, and here assigned the same for error.

*Elwell*, for the plaintiff in error, cited *Litt.* § 1; 4 *Kent Com.* 679; 2 *Bl. Com.* 108; 1 *Co.* 87 b.; Vanhorn *v.* Harrison, 1 *Dall.* 137; 6 *Mod.* 109; Foster *v.* Joice, 3 *W. C. C.* 498; Lytle *v.* Lytle, 10 *Watts* 259; Gray *v.* Packer, 4 *W. & S.* 17; 1 *Penn. R.* 453; Waller *v.* Hill, *Add.* 43; 3 *Yeates* 571; Maclay *v.* Work, 5 *Binn.* 158; Cook *v.* Trimble, 9 *Watts* 15.

*Mercur*, for the defendants in error, cited Stouffer *v.* Coleman, 1 *Yeates* 393; Neave *v.* Jenkins, 2 *Id.* 107; Sherman *v.* Dill, 4 *Id.* 298; Maus *v.* Montgomery, 11 *S. & R.* 329, 332; Defraunce *v.* Brooks, 8 *W. & S.* 67; McFarson's Appeal, 1 *Jones* 510; Andrew

[Ogden v. Brown et al.]

v. Southouse, 5 T. R. 292; Meanor v. McKowan, 4 W. & S. 302; Kenrick v. Smick, 7 Id. 41; Act 2d April 1822, P. L. 151.

The opinion of the court was delivered by

Strong, J.—If the instrument dated July 7th 1834, was an executory contract, then the absence of words of inheritance does not prevent its passing a fee simple in equity. The primary question in this case, therefore, is, whether that instrument is to be construed as a conveyance, or as an agreement to convey. And the rule is, that whether an informal instrument, transferring an interest in real estate, shall be held a conveyance, or only an agreement for a conveyance, depends not on any particular words or phrases found in it, but on the intention of the parties, as collected from the whole contract. The intent of the parties will control the technical words used: Jackson v. Myers, 3 Johns. 389; Neave v. Jenkins, 2 Yeates 107; Sherman v. Dill, 4 Yeates 295; Kenrick v. Smick, 7 W. & S. 41.

There are words in this instrument which import a present conveyance. We think there are others which indicate that it was not intended as a final disposition of the subject-matter; and if it was not, then the contract must be regarded as executory. If it take effect at all, as a present assurance, it must be as a deed of bargain and sale. It is not easy to see, however, how it can so operate, for while there is a bargain to declare an use, there is no consideration paid to raise one. The land is said to be conveyed in consideration that the vendee pay unto the vendor one-third of the produce during her natural life. It is not in consideration of his having paid it, nor of his promise to pay it, but rather upon condition precedent that he should pay it. If he complied with the condition, then he was to have free and peaceable possession, clear of all encumbrances. Stephen Wilcox, the vendee, did not sign the paper, and therefore there was no express engagement, on his part, to pay the consideration. Mrs. Cranmer took no security for it. There was not enough in the case for the law to imply a promise, on the part of the vendee, to pay, for he did not take possession under the instrument, and was not entitled to it until he should have delivered one-third of the produce during the natural life of the vendor. The purpose of the instrument was so evidently to make provision for Mrs. Cranmer, while she should live, that it can hardly be presumed her intention was to part with her interest irrevocably, without effectuating her purpose. This presumption seems still less reasonable, when it is noticed that she reserved for herself a life interest, which might have survived the estate of her grantee, if a present conveyance was intended. It is true, that in most cases where an informal instrument, containing words of present conveyance, has been held to be only an agreement to convey, there have been other words expressive of a

[Ogden *v.* Brown *et al.*]

design to execute other assurances, but this has not been uniformly the case. Where there is a covenant for a future conveyance, the intention is clear; but the intention may be manifested without such a covenant. Thus, in Foster *v.* Foster, 1 *Levinz* 55, the operative words of the writing were as follows: "The said Margery, in consideration of £20, hath bargained, demised, and granted, and doth hereby bargain, sell, demise, and grant to Matthew Foster, the tenements, &c., to have and to hold to him and his heirs for ever—she to have it during her life, and also she to have his barn during her life, for her third part." There were no words which spoke of a future conveyance. Yet this was held to be only an agreement, and not an executed conveyance. It was ruled, that the instrument raised no use, but rested only in covenant—that it was preparatory to further assurance. The reasons given for this conclusion were three—first, that the writing was entitled "articles of agreement;" secondly, that "she to have all for her life, was but an agreement;" and thirdly, that the provision "that she should have the vendee's barn, rested only in covenant, and if the estate should pass by way of use, and she have covenant only for the barn, it would be unequal." In some respects, that case presents fewer evidences of an intention not to pass the estate, than does the present. *There*, there was, at least nominally, a present consideration in part, and only a part was to be received. There, it was admitted that the vendor had the benefit of a covenant, and the writing contained an *habendum* and *tenendum* to Matthew Foster and to his heirs. Here we have an unsealed instrument purporting to convey, in consideration that the grantee would deliver one-third of the produce during the life of the grantor, and stipulating that then he should have free and peaceable possession, clear of all encumbrances. We think there is enough in it to manifest an intention that Stephen Wilcox should not have an absolute title until he should have delivered the produce, and until the death of Mrs. Cranmer. The contract was, therefore, executory, and the jury were rightly instructed that it passed a fee in equity.

The judgment is affirmed.

Thompson, J., dissented.