## Johnson *et al. versus* McCue *et al.*

An agreement to devise land to a grandson, in consideration of a covenant for the payment of an annual sum during the lives of the devisor and his wife, followed by the execution of such a will, vests an equitable title in the devisee, which may be enforced by ejectment, after the decease of the devisor.

Such an instrument is not revocable like an ordinary will; but is to be deemed a contract in writing, within the statute of frauds, sufficient to raise a legal duty which equity may treat as creative of an estate in the devisee.

ERROR to the Common Pleas of *Butler county*.

This was an ejectment by Catharine McCue and others against Michael Johnson and others, for sixty-one acres of land in Donegal township, Butler county.

On the 28th May 1849, Michael Maloney, being seised of the premises in question, made a will, by which he devised the same to Michael C. Maloney, a grandson; and by the same will he devised other parts of his farm to Nancy Johnson, Jeremiah Maloney, and Daniel Maloney. The devisees, at the same time, executed the following agreement:—

"Whereas Michael Maloney, senior, has this day *made a will*, in which he has divided his tract of land to Nancy Johnson, Michael C. Maloney, Jeremiah Maloney, and Daniel Maloney, in different portions as laid off by John Smith, surveyor, on the 26th April 1848: Now know ye, that we Barnard Johnson, for his wife Nancy, and Michael C. Maloney, Jeremiah Maloney, and Daniel Maloney, do hereby severally promise to pay to Michael Maloney, senior, and his wife, the just sum of twelve dollars and fifty cents each, from this date until the day of the death of the said Michael Maloney, senior, and his wife, and if any one of the parties above-named, neglects or refuses to pay their part, then, in that case, the grant in the will is to be null and void as to them, and the lands remain to be otherwise disposed of. Given under our hands and seals, the 28th day of May 1849."

Michael C. Maloney paid to his grandfather the $12.50 whilst he lived, and died in 1852, unmarried and without issue, leaving the plaintiffs, his mother and sister, surviving; who claimed the land as his heirs at law, and continually tendered to Michael Maloney, the elder, the $12.50 per annum mentioned in the contract. They brought an ejectment against him for the land, in his lifetime, which is reported in 1 *Casey* 306.

Michael Maloney, the elder, made another will, revoking that of 1849, and devising the premises in question to the defendants.

The court below (AGNEW, P. J.) instructed the jury that the will and agreement constituted a contract between the parties,

enforceable in equity; and that old Michael Maloney had no power to revoke the will in favour of Michael C. Maloney, in whose heirs the estate vested at the death of Michael Maloney, the elder.

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiffs, the defendants sued out this writ, and here assigned the same for error.

*Graham*, for the plaintiffs in error.—The making the will and the writing of 1849 are not only no evidence of a *contract* to convey either *express* or *implied*, but they are express evidence of the *contrary*. The old man made a will: the young man signed a bond. Now whatever may be the extent or character of the young man's engagement, the old man did not only not agree to be bound by *contract*, but by both the *form* and *substance* of his will, expressly *willed not* to agree. *Expressio unius est exclusio alterius.* A will is a revocable instrument both in *form* and *substance.* It must have its *legal significance* at least until it is proved by *superior* evidence in *writing* to be something else. It cannot be tortured into a *contract* by mere presumptions and implications: 1 *Story Eq.* §§ 97 and 107.

*Sullivan*, for the defendants in error, cited Colt *v.* Selden, 5 *Watts* 525; McFarson's Appeal, 1 *Jones* 503; Woods *v.* Wallace, 10 *Harris* 171; Brinker *v.* Brinker, 7 *Barr* 53; McCue *v.* Johnston, 1 *Casey* 306.

The opinion of the court was delivered by

LOWRIE, C. J.—An estate in land exceeding a term of three years must, says the statute of frauds, be created by a writing, signed by the party creating it. And, of course, the writing must be of such a nature as to create either a present legal estate, or a legal duty, which equity may treat as creative of the estate intended, and enforce as such. We need not say that a writing that is not in any proper sense complete, and a mere last will, are not of this nature.

The writings in this case are quite a new invention; and as is usual in such cases, however cheap may be the single instrument, the test of its principle must be very expensive to somebody. The principal writing is in the form of a will, devising the land in controversy together with other lands. At the time of its execution, the devisees, as we may call them, executed and delivered to the devisor, in consideration thereof, a contract under seal, by which each agreed to pay to the devisor $12.50 (a year as it is understood), and that, in case of neglect to do so, the grant in the will should be null and void, as to the party neglecting. In addition to these facts, it is admitted, that the two papers represent one transaction; that the devisor acknowledged and performed the

[Johnson *et al. v.* McCue *et al.*]

arrangement so long as the devisee of this particular piece of land lived; that he admitted him to take and hold the possession, and received from him the sum of $12.50 a year; and that since the devisee's death it has been regularly tendered to him and refused.

We cannot therefore regard the principal writing as a will. A will is simply a unipartite disposition of property; but this writing is part of an arrangement and disposition that are essentially bipartite, and hence not subject to the will of one only, and therefore not revocable like a last will. To effectuate the intention of the writings, we must strain the bungling form of the scrivener. We must treat the two papers as one contract, whereby one man, in consideration of the covenants of the other, grants to that other a given estate in land to vest in possession at the death of the grantor. We treat the grant as an executed one, because otherwise the remedy would be in the Orphans' Court, 5 *Harris* 193, and because the parties have not raised any question about the proper forum.

There is an apparent difficulty arising from the fact that the principal writing was not delivered. But the form of the transaction shows that delivery was not intended. The contract was to be complete and perfect without this, and the delivery of the other side of the contract by the other parties, and the subsequent dealings and actual relations of the parties show that it was complete and perfect. The delivery of the will would have made this fact more obvious, but it was not essential to the perfection of the contract.

Judgment affirmed and record remitted.

STRONG, J., dissented. WOODWARD, J., was absent.