## Conlan *v.* Conlan, Appellant.

*Will—Bond—Contract—Delivery—Ejectment.*

Where a testator executes a will by which he devises real estate to his son subject to the payment of a monthly sum to testator's sister, and at the same time testator takes from his son a bond conditioned for the payment of a monthly sum during the testator's life and also the payment of a monthly sum to testator's sister to commence after testator's death, and both the will and the bond are placed in a sealed envelope which is delivered to a third person to be held during the lifetime of the testator and

delivered after his death to the devisee, and it appears that at the time of testator's death the son had paid to his father a sum sufficient in the aggregate to constitute the monthly payments during the lifetime of his father as provided for in his bond, and it also appears that the sister of testator, after the latter's death, had accepted monthly payments from the son receipting for the same as " being the amount due me under the will of the said decedent," the son is entitled to the real estate under the will and bond, as against an agreement made later in date between the testator and his sister, by which the latter was to have the real estate during her life, and the son's title is such that he may maintain ejectment against his aunt for the possession of the real estate.

Argued March 10, 1902.    Appeal, No. 21, Jan. T., 1902, by defendant, from judgment of C. P. Luzerne Co., Jan. T., 1897, No. 313, on verdict for plaintiff, in case of B. J. Conlan v. Mary Conlan.    Before RICE, P. J., BEAVER, ORLADY and W. D. PORTER, JJ.    Affirmed.

Ejectment for land in Pittston.    Before HALSEY, J.

The opinion of the Superior Court states the case.

The court gave binding instructions for plaintiff.    Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*James L. Morris*, for appellant.—The bond and the will of July 5, 1894, must be construed together as one instrument constituting an executory contract: Williams v. Bentley, 27 Pa. 294 ; Ogden v. Brown, 33 Pa. 247 ; Shirley v. Shirley, 59 Pa. 267 ; Dreisbach v. Serfass, 126 Pa. 32 ; Lemon v. Graham, 131 Pa. 447.

Binding instructions should not be given when the evidence should be submitted to the jury on its credibility or sufficiency, or on a question of fact to be determined by the jury only, from the circumstances of the case, though the evidence may be uncontradicted : West Branch Bank v. Donaldson, 6 Pa. 179 ; Madara v. Eversole, 62 Pa. 160 ; Grambs v. Lynch, 20 W. N. C. 376 ; Lamb v. Erwin, 69 Pa. 436 ; Fulton v. Lancaster County, 162 Pa. 294 ; Lehigh & Nav. Coal Co. v. Evans, 176 Pa. 28 ; Prindle & Co. v. Kountz Bros. Co., 15 Pa. Superior Ct. 258 ; Vandervort v. Wheeling Steel & Iron Co., 194 Pa. 118.

45, (1902).]        Arguments—Opinion of the Court.

*D. L. Rhone*, with him *Peter A. O'Boyle*, for appellee.—That the document in question is not revokable like an ordinary will is settled in Johnson v. McCue, 34 Pa. 180: Smith v. Tuit, 127 Pa. 341.

The will was in effect a deed subject to certain contingencies after the death of the testator, and it was delivered: Stephens v. Huss, 54 Pa. 20; Stephens v. Reinhart, 72 Pa. 434; Turner v. Scott, 51 Pa. 126.

An affirmance of part of the will by entering upon an enjoyment·conferred by it is a tacit repudiation of all rights and claims inconsistent with the other dispositions made by it: Preston v. Jones, 9 Pa. 456; Bannon v. Brandon, 34 Pa. 263.

OPINION BY BEAVER, J., April 21, 1902:

Plaintiff is the son and defendant the sister of the decedent, through whom both claim title. The plaintiff's claim is based upon the will of the decedent and a bond of the same date given by the plaintiff to his father. In the will is this devise: "I give, devise and bequeath unto my son, Bernard J. Conlan, all my estate, real, personal and mixed, wherever situate, to have and to hold the same, his heirs and assigns, forever, provided, however, that he shall pay to my sister, Mary Conlan, the sum of five dollars per month commencing after my death, as provided in a certain bond given me by my said son, bearing even date herewith." The bond is dated July 5, 1894, in the sum of $1,000 and contains this condition: "The condition of this obligation is such that, if the said B. J. Conlan, his executors, administrators and assigns, shall and do well and truly pay or cause to be paid unto the said Peter Conlan the just sum of five dollars per month commencing on the 15th day of July, 1894, and continuing thereafter from month to month during the natural life of the said Peter Conlan and shall also pay to Mary Conlan, sister of the said Peter Conlan, a like sum of five dollars per month during her natural life, the said payment to her to commence only after the death of the said Peter Conlan, then this obligation to be void; otherwise to be and remain in full force and virtue." The bond contains a confession of judgment and waiver of inquisition and appraisement. These were enclosed in an envelope indorsed, "Will of Peter Conlan and bond of B. J. Conlan, to be delivered to

B. J. Conlan after my death but not before," signed with the testator's mark and witnessed by the attorney who prepared both papers and who testifies that "they were both drawn on the same day in the presence of both parties, B. J. Conlan and Peter Conlan, the old gentleman."

It appears from the testimony of the plaintiff that he received this sealed package containing the will and bond aforementioned from the cashier of the First National Bank of Pittston who testifies that the package was left there by Peter Conlan in his lifetime ; that it was sealed and remained in the possession of the bank as a sealed package, until after the death of Peter Conlan, when it was delivered to whoever was entitled to have it, in that condition. The plaintiff further showed that he had paid the defendant $5.00 per month from the time of the death of his father, which had been received by her as being due under the will of Peter Conlan. He also showed that he had made payments to or for or on account of his father, aggregating a sufficient amount to constitute the $5.00 per month payable during the life-time of his father, as provided for in his bond.

Defendant claims under an agreement dated July 16, 1894, containing the following paragraphs :

" First. That the said Mary Conlan shall continue to act in the capacity of housekeeper to the said Peter Conlan during his natural life and as such to give her best care and attention to the said Peter Conlan during his natural life.

" Second. It is agreed, in consideration as aforesaid, that the said Mary Conlan shall continue to keep, possess and have full control of the premises, house and contents, after my death so long as she shall live, known as No. 137 Pine street in the borough of Pittston, in which the parties to this agreement now reside. This being the true intent and meaning of this agreement that, in consideration of the premises, the said Mary Conlan shall have the said house and lot, No. 137 Pine street, in the borough of Pittston and its contents for a home as long as she shall live."

Under the facts thus stated, was the plaintiff entitled to recover ?

1. What was the legal effect of the will and bond taken together, delivered to a third party by the testator in his life-

time for delivery to his son, after his death? In Johnson v. McCue, 34 Pa. 180, this question is fully discussed. The facts were somewhat analogous to the present case. " The principal writing is in the form of a will devising the land in controversy together with other lands. At the time of its execution the devisees, as we may call them, executed and delivered to the devisor, in consideration thereof, a contract under seal by which each agreed to pay to the devisor $12.50 (a year, as it is understood), and that, in case of neglect to do so, the grant in the will should be null and void as to the party neglecting. In addition to these facts it is admitted that the two papers represent one transaction; that the devisor acknowledged and performed the arrangement, so long as the devisee of this particular piece of land lived; that he admitted him to take and hold the possession and received from him the sum of $12.05 a year and that, since the devisee's death, it has been regularly tendered to him and refused.

" We cannot, therefore, regard the principal writing as a will. A will is simply a unipartite disposition of property but this writing is part of an arrangement and disposition that was essentially bipartite and hence not subject to the will of one only and, therefore, not revocable like a last will. To effectuate the intention of the writings, we must strain the bungling form of the scrivener. We must treat the two papers as one contract, whereby one man, in consideration of the covenants of the other, grants to that other a given estate in land to vest in possession at the death of the grantor. We treat the grant as an executed one, because otherwise the remedy would be in the orphans' court, Myers v. Black, 17 Pa. 193, and because the parties have not raised any question about the proper forum.

" There is an apparent difficulty arising from the fact that the principal writing was not delivered. But the form of the transaction shows that delivery was not intended. The contract was to be complete and perfect without this, and the delivery of the other side of the contract by the other parties and the subsequent dealings and actual relations of the parties show that it was complete and perfect. The delivery of the will would have made this fact more obvious, but it was not essential to the perfection of the contract." To the same effect is Smith v. Tuit, 127 Pa. 341, in which it was held that, under

practically similar circumstances, the devisee, so-called, having been put in possession, could not be ousted from the land even by the testator, but has vested in him a right of possession sufficient to defeat ejectment brought by the testator or his grantee.

The case under consideration is even stronger than Johnson v. McCue supra, for here the contract was even more fully executed by the delivery of the will and the bond to a third person to be held during the lifetime of the testator and delivered after his death to the devisee.

2. As to the delivery. When the package was delivered by the cashier of the bank to the plaintiff, the delivery was perfect and by relation took effect when it was given to the cashier. Stephens v. Huss, 54 Pa. 20; Stephens v. Rinehart, 72 Pa. 434; Landon v. Brown, 160 Pa. 538; Wagoner's Est., 174 Pa. 558. It may be admitted that, if the plaintiff had failed to comply with the conditions of his bond, the mere delivery of the will and bond by the cashier of the bank to him, after the death of the father, might not have vested the title, because there would have been no relation back to the date of delivery in escrow. Landon v. Brown, 160 Pa. 538. See also Davis v. Martin, 8 Pa. Superior Ct. 133, in which we held, " that in transactions intended to secure to the grantor a competent support during his life a deed, no matter how strong its words in the present tense, will not pass the estate, if from other parts of the instrument the intention appears to be otherwise : Williams v. Bentley, 27 Pa. 294; Ogden v. Brown, 33 Pa. 247; Dreisbach v. Serfass, 126 Pa. 32; Ringrose v. Ringrose, 170 Pa. 593. Those cases also hold that such conveyances are to be regarded as executory contracts, subject to the rules of equity as to their construction and enforcement." In the latter case the question arose as to whether or not the grantee had fulfilled the conditions upon which the estate was granted. Whether the plaintiff in this case fulfilled the conditions of his bond, so far as his father was concerned, is, as we view it, immaterial, because the defendant is not in a position to raise that question, the plaintiff being entitled to the entire estate subject only to the payment of $5.00 per month to the defendant during her life. As a matter of fact, there was evidence that the plaintiff had paid, either directly to or on account of

his father's debts, what was equivalent to the amount to be paid under the terms of the bond.

Under the facts in this case and the authorities which we have cited, it seems to us clear that the will and bond taken together vested such a title in the devisee as may be enforced by ejectment after the decease of the devisor. If this be true, the claim of the defendant, based as it is upon an agreement subsequent to the date of the will and bond, which together constitute one transaction, does not constitute a good defense, and cannot overturn the title of the plaintiff.

3. Particularly must this be so, in view of the fact that the defendant has recognized the validity of the will and has regularly received from the plaintiff the amount stipulated to be paid to her monthly during her life and has receipted therefor as coming to her and " being the amount due me under the will of the said decedent." The defendant cannot claim under the will for one purpose and deny its validity for another and, having received and accepted what is stipulated to be paid her in the will and by the bond of the plaintiff, she is bound thereby. Without, therefore, considering the several specifications of error in detail, we think the direction of the trial judge in the court below to return a verdict for the plaintiff was correct.

Judgment affirmed.