Swartz *v:* Hafer et al., Appellants.

Argued April 10, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Robert Grey Bushong,* for appellants.

*Emanuel Weiss,* with him *Edward Youngerman,* for appellee.

OPINION BY MR. JUSTICE JONES, May 27, 1946:

This appeal is by Allen F. Hafer and Florence S. Hafer, his wife, from a decree in equity ordering and directing them to deliver to the plaintiff possession of certain premises in Shillington, Berks County, and ordering and directing Charles K. Derr, Esq., to deliver up to the plaintiff for cancellation a deed in his possession from the plaintiff and her husband to the Hafers for the property above mentioned.

The controversy grows out of an arrangement entered into between Mrs. Swartz (the plaintiff) and the Hafers whereby the former agreed to convey to the Hafers the property in litigation (which Mrs. Swartz, individually, had recently purchased) in consideration of the Hafers' "furnishing a home with maintenance, care and nursing for [Mrs. Swartz] and her husband, for and during the rest of their natural lives". Mrs. Hafer is a niece of Mrs. Swartz. The home was to be in the property to be conveyed into which the Hafers agreed to move with Mrs. Swartz and her husband.

The agreement was committed to writing by Charles K. Derr, Esq., Mrs. Swartz's attorney, who acted for all of the parties in this matter. The agreement was signed by Mrs. Swartz and the Hafers on November 20, 1942,

and on the same day Mrs. Swartz, joined by her husband, executed a deed to the Hafers for the property as contemplated by the agreement. After the deed had been executed and acknowledged, Mr. Derr retained it in his office and it was never recorded. He testified at the hearing below that it was his understanding, derived from the parties in the course of the transaction, that he was not to deliver the deed to the Hafers or have it recorded until later instructed by the parties so to do; and, that it was Mrs. Swartz's expressed desire to wait a while to see how the living arrangements would work out before the deed was delivered. The deed contained a reservation to the grantors of ". . . a life estate of the property hereby conveyed, giving [them] the right to use and occupy free of rent or any other charge whatsoever, during their joint lives and the life of the survivor of them, the property hereby conveyed, with free access at all times to the same and the right to quiet and peaceful possession and enjoyment thereof, without hindrance or molestation on the part of anyone".

At the time of the execution of the agreement, Mrs. Swartz was sixty-five years old and her husband was seventy-two. He was so seriously ill that he required the attendance of a nurse. The Swartzes and the Hafers (including the latter's three grown children) moved into the house on December 8, 1942, Mr. Swartz, accompanied by his nurse, being transported there in an ambulance. The understanding was that the services of the nurse would be dispensed with as soon as she had instructed Mrs. Hafer what to do for the proper nursing of Mr. Swartz. When Mrs. Hafer found out the character and extent of the services to Mr. Swartz required by his illness, she refused to do anything for him. Mr. Swartz died December 13, 1942. The nurse testified that, during the five days Mr. Swartz lived in the house, there was "so much noise and carrying on" by Hafers, with "laughing and hollering", that she had to request them (to no avail) to keep quiet, reminding them that her patient was dy-

ing. After Mr. Swartz's death, the plaintiff continued to live in the house with the Hafers until sometime in January 1943 when she went away for about a month. Upon her return she remained in the house until March 31, 1943, and then left for good, largely because of the Hafers' attitude toward her, in part evidenced by their rudeness and lack of consideration for her. The Hafers refused Mrs. Swartz's subsequent and repeated demands for possession of the property and the suit here involved eventually followed.

The learned chancellor found that the Hafers had neglected and refused to perform the services required of them by the agreement and that, consequently, there was a failure of consideration for the grant. The findings of the chancellor in such regard were affirmed by the court en banc and have ample support in the evidence. We are not at liberty, therefore, to give them other than the binding effect to which they are entitled: *Drob v. Jaffe,* 351 Pa. 297, 299, 41 A. 2d 407.

As the court below correctly observed, the conclusion of law that the plaintiff was entitled to exclusive possession of the premises and a return of the deed for cancellation logically flowed from the established findings. The agreement itself expressly provided that "If, for any reason whatsoever the [Hafers] should be unable to carry out their part of the agreement, or should they be unwilling to continue to carry out the agreement, in either case [they] agree to reconvey the premises . . . to [Mrs. Swartz], or her estate, if not living, and terminate the agreement". Even where no specific provision has been made for a reconveyance of a property conveyed under circumstances similar to the present, a failure of the grantees to perform the services for which they are obligated justifies an order requiring a reconveyance: see *Borys v. Halko,* 124 Pa. Superior Ct. 418, 188 A. 539. The contract here involved was an executory one, subject to the rules of equity as regards its construction and enforcement: *Dreisbach v. Serfass,* 126 Pa. 32, 40, 17

A. 513; *Davis v. Martin,* 8 Pa. Superior Ct. 133, 138. See also *Overmiller v. Town and Village Insurance Service,* 145 Pa. Superior Ct. 347, 352, 21 A. 2d 411.

The appellants argue that the covenant of "quiet and peaceful possession and enjoyment" in connection with the life estate reserved to the plaintiff and her husband by the deed should be given its technical meaning that ". . . the tenant shall not be evicted or disturbed by good title in the possession of the demised premises or some part thereof": *Moore v. Weber,* 71 Pa. 429, 431. Accordingly, the appellants contend that, since the plaintiff has not been evicted or disturbed in her possession of the premises by a better title, she is without cause for complaint. Such a contention entirely ignores the intention of the parties as evidenced by their written agreement. The deed and the contemporaneous agreement must be read together: cf. *Davis v. Martin,* supra. True enough, in the case last cited the agreement for maintenance and care was a part of the deed itself. The fact that the agreement in the instant case was contained in a separate formal instrument executed contemporaneously with the deed does not make the agreement any less important in the ascertainment of the purpose and intent of the grant. The cases cited by the appellants on the meaning of the covenant in the deed all relate to a landlord and tenant relationship, which is not the relation of the parties to this suit.

Little need be said with respect to the appellants' remaining points. The reception of Mr. Derr's oral testimony respecting his retention of the deed undelivered did not violate the parol evidence rule. There was nothing in the written agreement as to the date upon which the matter was to be consummated by a delivery of the deed. The testimony in no way varied the terms of the agreement: see *Gianni v. R. Russell & Co., Inc.,* 281 Pa. 320, 324, 126 A. 791; cf. *Evans v. Edelstein,* 276 Pa. 516, 519, 120 A. 473. But, even if the admission of the testimony was error, it was harmless in view of the defendants'

established breach of the agreement. That fact rendered immaterial any inquiry as to when the deed was or should have been delivered. And, in no event, was there a delivery. Where a deed is left with a third party who is attorney for both parties to the deed, a delivery does not take place unless there is "an express understanding that it was to be handed to the grantee": *Lewis v. Merryman,* 271 Pa. 255, 258, 114 A. 655. Here, the chancellor competently found that the deed was left in the custody of Mr. Derr, as attorney for both parties, "without an express understanding that it was to be handed to the grantees". Equally immaterial is the contention that Mrs. Hafer was not present when the oral understanding as to Mr. Derr's retention of the deed without delivery was arrived at. The testimony of Mr. Derr's secretary placed the plaintiff and both of the Hafers in the conference in Mr. Derr's office at the critical time.

The decree is affirmed at the appellants' costs.